```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                     TAMPA DIVISION

NATIONAL NURSES ORGANIZING
COMMITTEE - FLORIDA/NATIONAL
NURSES UNITED, AFL-CIO,

        Plaintiff,
v.                                  Case No. 8:20-cv-2914-VMC-SPF

LARGO MEDICAL CENTER, INC.,

        Defendant.
_____/
```

**ORDER**

This matter comes before the Court upon consideration of Plaintiff National Nurses Organizing Committee – Florida/National Nurses United, AFL-CIO's ("the Union's") Motion for Summary Judgment to Compel Arbitration (Doc. # 32), filed on April 23, 2021. Defendant Largo Medical Center, Inc., responded on May 14, 2021 (Doc. # 34), and the Union replied on May 24, 2021. (Doc. # 35). For the reasons set forth below, the Motion is granted in substantive part.

**I.   Background**

The Union "represents a bargaining unit of registered nurses" ("RNs") employed at Largo Medical, a hospital in Pinellas County, Florida. (Doc. # 1 at ¶¶ 1, 6; Doc. # 16 at ¶ 1; Doc. # 32-1 at ¶ 4). The Union and Largo Medical are parties to a collective bargaining agreement ("CBA")

1

effective from October 22, 2018, through May 31, 2021. (Doc. # 1-1 at 1). The CBA provides procedures for the resolution of grievances between the Union and Largo Medical. (Id. at 34). The CBA defines a "grievance" as "any complaint against [Largo Medical] submitted by the Union in writing for an alleged breach of a specific provision of [the CBA], except as to those provisions which are not subject to [Article 18]." (Id. at 35). A "class grievance" is defined as "any complaint against [Largo Medical] submitted in writing by the Union on behalf of two [] or more [RNs] and regarding the same alleged breach of [the CBA] or multiple alleged breaches of the same provision(s) of [the CBA]." (Id).

**A. The CBA's Grievance and Arbitration Procedures**

Article 18 of the CBA outlines the process for resolving such grievances. (Id. at 9, 34-36). The CBA's formal grievance procedure begins with the Union "submitting a written grievance to Human Resources within" a set deadline. (Id.). This written grievance shall:

> (1) be dated; (2) be signed by the grievant or a Union representative responsible for advancing the grievance; (3) set forth the name(s) of the Registered Nurse(s) or class of Registered Nurses on whose behalf the grievance is being brought; (4) include a description of the acts giving rise to the grievance; (5) set forth the date(s) on which the act(s) giving rise to the grievance occurred; (6) identify the Article(s) and Section(s) of the

[CBA] allegedly violated; and (7) state the remedy requested.

(Id. at 35-36). Thereafter, the Union and Largo Medical must participate in three "steps" of meetings and written communications with various levels of personnel and within certain deadlines – unless the grievance is satisfactorily resolved prior to moving to the next step of the process. (Id. at 34-36). If the procedures described in Article 18 fail to resolve the grievance, "the Union may advance the grievance to arbitration." (Id. at 9).

The parties' arbitration agreement and procedures are outlined in Article 2 of the CBA. (Id. at 9-11). Article 2 describes the scope of the arbitrator's authority as follows:

> 1. The arbitrator shall limit his/her opinion to the interpretation and/or application of the [CBA] and shall have no power to add to, subtract from, modify, change[,] amend or delete any of the terms or provisions of the [CBA]. Further, the arbitrator may not hear any matter after this [CBA] has expired other than matters which arose prior to the expiration of the [CBA]. No arbitrator shall attempt to mediate a dispute before, during or after hearing the arbitration on the same matter without first obtaining express written permission from both parties.
>
> 2. If there is an issue as to whether a grievance is barred for failure of one (1) or both of the parties to comply with the procedural requirements of this Article (procedural arbitrability), the same arbitrator will be permitted to rule on both the question of procedural arbitrability and the merits; provided that the arbitrator shall first

3

> issue a decision resolving the procedural arbitrability issue before hearing the merits.

(Id. at 10).

**B. The Union's Grievance**

On May 11, 2020, the Union e-mailed Dana Austin – a labor relations specialist at HCA, Largo Medical's parent company – a document it argues constitutes a written grievance under the CBA. (Doc. # 32-1 at ¶¶ 10-12). The document alleges:

> Within the grievance period, [Largo Medical] has violated the following: [Article] 31, [Section] 1, by requiring RNs to be on-call without paying $3.50 per hour for time spent on-call; Article 31, [Section] 2 by failing to pay RNs 1.5 times the hourly rate, and a minimum of two hours, for call-back pay; [Article] 7, [Section] C by failing to pay established minimums in the CBA, and failing to notify and meet with the Union over compensation changes; [Article] 18, [Section] 1, by failing to engage in good faith efforts to resolve these disputes.

(Doc. # 1-2; Doc. # 32-1 at ¶ 12; Doc. # 32-4). The document provides that it was filed on behalf of a group of "RNs Impacted by [Largo Medical's] Violations of On-Call, Call-Off, Minimums, and Good Faith" and notes that the group seeks "[b]ack-pay for time on-call and call-back," and that Largo Medical "pay all minimums established in the CBA," "properly notify the Union of any prospective changes[,] and engage in good faith efforts to resolve prospective disputes." (Doc. # 1-2). The document does not include the name of all RNs

4

included within the class, but does name RN representative Martin Peebles. (Id.). Regarding the date of the violations, the document states only: "Multiple [within] 21 days." (Id).

Austin did not respond to the Union's e-mail regarding this grievance. (Doc. # 32-1 at ¶ 14). Peebles and the Union then contacted her multiple times in an effort to proceed with the CBA's grievance resolution procedural requirements. (Doc. ## 32-5, 32-6, 32-7). Still, Austin did not respond to several of those e-mails. (Doc. # 32-1 at ¶¶ 15-17). Finally, on May 28, 2020, after the Union contacted Largo Medical's chief executive officer regarding the grievance, Austin responded, explaining that the purported grievance "fails to meet the definition of a grievance per the [CBA]" as "[i]t does not contain any particular incident, date, or nurse/nurses as it relates to the potential claim." (Doc. # 32-8). Because of this, Austin concluded that the "grievance is not grievable/arbitrable." (Id.).

On June 10, 2020, the Union notified Austin that it would be "advancing the [grievance] to arbitration." (Doc. # 32-9 at 1; Doc. # 32-1 at ¶ 19). On June 29, 2020, Brett Ruzzo – counsel at HCA – sent the Union a letter explaining that the "May 11, 2020, grievance filed by the Union did not meet the definition of a grievance pursuant to the CBA" for the reasons

5

previously outlined by Austin. (Doc. # 32-12 at 2; Doc. # 34 at 5). Again, Ruzzo noted Largo Medical would not be proceeding with arbitration. (Doc. # 32-12 at 2).

The Union initiated this action on December 8, 2020. (Doc. # 1). The Union seeks: (1) an order compelling Largo Medical to submit the grievance previously outlined to arbitration pursuant to the terms of the CBA, (2) an order directing Largo Medical to select an arbitrator with the Union by a date certain, and (3) attorney's fees and costs. (Id. at 5). Largo Medical filed its answer on January 19, 2021. (Doc. # 16). Now, the Union moves for summary judgment on the relief sought in the complaint. (Doc. # 32). The Union also requests oral argument. (Doc. # 32-13). Largo Medical has responded (Doc. # 34) and the Union replied. (Doc. # 35). The Motion is ripe for review.

## II. Legal Standard

"A motion to compel arbitration is treated as a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction." Babcock v. Neutron Holdings, Inc., 454 F. Supp. 3d 1222, 1228 (S.D. Fla. 2020) (citations omitted). Accordingly, "the Court may consider matters outside the four corners of the Complaint." Id. When determining the existence of an arbitration agreement, federal courts employ a "summary

judgment-like standard," "conclud[ing] as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement.'" Bazemore v. Jefferson Cap. Sys., LLC, 827 F.3d 1325, 1333 (11th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). "A dispute is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" Id. (quoting Baloco v. Drummond Co., 767 F.3d 1229, 1246 (11th Cir. 2014)).

### III. Analysis

In its Motion, the Union argues that "there is no dispute the parties' CBA contains a valid agreement to arbitrate" and "there is no genuine issue of material fact as to whether the arbitration clause covers the subject matter raised in the [g]rievance." (Doc. # 32 at 11-12). The Union also contends that any issues regarding "procedural arbitrability are for the arbitrator to decide, not the court." (Id. at 12). Largo Medical responds that the "Union's purported grievance fails to satisfy the definition of 'grievance' under the [CBA]," such that the parties did not agree to arbitrate the issues raised therein. (Doc. # 34 at 2-5, 7).

Under the Federal Arbitration Act ("FAA"), a written

7

arbitration provision in a "contract evidencing a transaction involving commerce . . . [is] valid, irrevocable, and enforceable," unless law or equity necessitates revocation of the contract. 9 U.S.C. § 2 (2020). Federal law favors arbitration agreements. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. However, "a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960).

"Before deciding whether a case should be referred to arbitration, 'a court must determine: (1) whether there is a valid agreement to arbitrate; (2) whether a court or an arbitrator should decide if the dispute falls within the scope of the agreement to arbitrate; and (3) whether the dispute does fall within the scope – the question of arbitrability.'" Van Williams v. Voya Fin. Advisors, Inc., No. 8:20-cv-2611-VMC-JSS, 2021 WL 50491, at *2 (M.D. Fla. Jan. 6, 2021) (quoting Convergen Energy LLC v. Brooks, No. 20-cv-3746 (LJL), 2020 WL 5549039, at *13 (S.D.N.Y. Sept. 16, 2020)).

Here, Largo Medical does not argue that the CBA's arbitration provisions are invalid or unenforceable. (Doc. #

8

34 at 8). And, neither party appears to argue that the initial question of arbitrability should be submitted to the arbitrator. (Doc. ## 32; 34; 35). Accordingly, the Court turns to the scope of the arbitration agreement.

The Court finds that the parties have agreed to arbitrate whether a grievance has complied with the procedural requirements of the CBA such that the parties may proceed to arbitration over the grievance. Indeed, in Article 2 of the CBA, the authority of the arbitrator expressly includes "procedural arbitrability":

> If there is an issue as to whether a grievance is barred for failure of one (1) or both of the parties to comply with the procedural requirements of this Article (procedural arbitrability), the same arbitrator will be permitted to rule on both the question of procedural arbitrability and the merits; provided that the arbitrator shall first issue a decision resolving the procedural arbitrability issue before hearing the merits.

(Doc. # 32-3 at 10). Article 2 of the CBA begins by stating that it "is to be administered in strict compliance with the Grievance Article, Article 18, including all definitions, limitations, and procedures provided for therein." (Id. at 9). It also provides that the parties "may advance the grievance to arbitration" only "[i]f the grievance is not satisfactorily resolved on the basis of the Step 3 grievance response." (Id.). Thus, the agreement to arbitrate includes

9

the question of whether the Union adequately followed the procedures to submit a grievance outlined in Article 18 such that it could pursue arbitration.

And, the Court agrees with the Union that <u>Washington Hospital Center v. Service Employees International Union, Local 722, AFL-CIO</u>, 746 F.2d 1503 (D.C. Cir. 1984), is instructive. (Doc. # 32 at 17-18; Doc. # 35 at 5). There, a hospital refused to arbitrate a Union's grievances, contending that the hospital did not correctly follow the procedural steps outlined in their CBA. <u>Id.</u> at 1505-07 ("Both the Porter and Felder grievances reached Step 3 in late October 1982. However, the Union failed to give the contractually [] mandated notice to the Hospital's Personnel Director within twenty days of the conclusion of that step."). The D.C. Circuit determined that these sorts of procedural disputes should be left to the arbitrator. <u>Id.</u> at 1507-08 ("There are no questions of material fact here; the Union simply failed to comply with procedural requirements. It is well-settled that the effect of such failures is for an arbitrator to decide."). Although Largo Medical attempts to distinguish <u>Washington Hospital</u> by arguing that this case does not deal with a procedural requirement, the Court disagrees. (Doc. # 34 at 9-10). The reason why Largo Medical

refuses to arbitrate is because the Union allegedly did not adequately comport with Article 18, Section 3 of the CBA, titled "Grievance Procedure." (Doc. # 1-1 at 27); <u>see also</u> (Doc. # 32-12 at 2 (noting Largo Medical's view that the Union failed to comply with Article 18, Section 3.C. of the CBA)).

Thus, the Motion is granted to the extent it seeks an order compelling arbitration and an order directing Largo Medical to select an arbitrator with the Union as outlined in the CBA. (Doc. # 32 at 21; Doc. # 1 at 5). The case is therefore stayed pending the arbitrator's resolution of this matter. <u>See</u> <u>Milestone v. Citrus Specialty Grp., Inc.</u>, No. 8:19-cv-2341-WFJ-JSS, 2019 WL 5887179, at *3 (M.D. Fla. Nov. 12, 2019) (staying a case pending arbitration). Because the Court has granted the Union's Motion, it declines to grant its request for oral argument. (Doc. # 32-13). To the extent the Union requests an award of attorney's fees, it must file a separate motion establishing the basis for such relief.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff National Nurses Organizing Committee – Florida/National Nurses United, AFL-CIO's ("the Union's") Motion for Summary Judgment to Compel Arbitration (Doc. # 32) is **GRANTED** in substantive part.

(2) The case is hereby referred to arbitration and **STAYED** pending resolution thereof. The Clerk is directed to **STAY** and administratively **CLOSE** the case.

(3) Defendant Largo Medical Center, Inc., and the Union are **DIRECTED** to select an arbitrator as outlined in Article 2 of the Collective Bargaining Agreement (Doc. # 1-1 at 9) by **August 31, 2021.**

(4) The parties are **DIRECTED** to file a joint report of the status of the arbitration proceeding by **November 8, 2021,** and every ninety days thereafter. The parties must immediately notify the Court upon the arbitrator's resolution of this matter.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 9th day of August, 2021.

*Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE